892 So.2d 633 (2004)
STATE of Louisiana
v.
Ruben SOSA.
No. 04-KA-507.
Court of Appeal of Louisiana, Fifth Circuit.
December 28, 2004.
*634 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Martin Belanger, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
James D. Maxwell, Kenner, Louisiana, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SOL GOTHARD and CLARENCE E. McMANUS.
*635 SOL GOTHARD, Judge.
Defendant, Ruben Sosa, was charged in a bill of information on October 18, 2001 with arson in violation of La.R.S. 14:52 and pled not guilty. The bill of information was amended on December 12, 2002 to charge defendant with arson with intent to defraud in violation of La.R.S. 14:53.[1] Defendant was rearraigned on the amended charge and pled not guilty. He proceeded to trial on October 28, 2003. After a three-day trial, defendant was found guilty as charged by a six-person jury. He was sentenced to five years. The first two years were ordered to be served on home incarceration and the last three years were suspended in favor of three years of active probation. Defendant was also ordered to make restitution within five years.
Defendant filed this appeal challenging his conviction and sentence. He also sought and was granted an appeal bond.

FACTS
On January 26, 2000, Dennis Guidry, with the Jefferson Parish Arson Investigation Unit, investigated a fire that occurred at 3601 Page Drive in Metairie. Two days prior to the fire, Guidry had the ATF[2] install a surveillance camera to monitor the residence due to an ongoing investigation of defendant. At the time of the fire, Guidry had "flagged" the address with Fire Alarm Headquarters, which meant the on-call investigator was to be notified anytime there was a response to the address. Guidry was the on-call investigator when the fire occurred. He subsequently called Agent John Springer, with the ATF, to advise there was a fire at the location that was under surveillance.
Both Guidry and Springer arrived at the scene shortly after noon. Guidry spoke with defendant after advising him of his rights. According to Guidry, defendant stated he left the house around 7:30 a.m. and passed back by the house at 10:30 a.m. but did not stop. At trial, defendant's wife testified that defendant is from Puerto Rico and that in his language and culture, "pass by" means to stop and go inside. The surveillance videotape showed that defendant went into his house at 10:53 a.m. and exited at 11:01 a.m. Smoke was visible from the residence approximately fifty minutes later.
Guidry subsequently obtained defendant's consent to search the residence. Guidry and Springer inspected the interior of the residence and found the heaviest fire damage to be in the kitchen. Springer testified that, upon observation of the damage, it did not appear there was normal progression of the fire. He determined the fire started along the east wall of the kitchen near the gas range and spread into the attic by an unnatural hole in the ceiling. He concluded the fire was intentionally set although he could not say how the fire was set.
As part of his investigation, Springer contacted Robert Alonzo, an electrical engineer, and requested he inspect the residence to determine whether the fire was caused by an electrical failure. Alonzo inspected the residence two days after the fire and concluded there was no evidence that any electrical wiring was involved in the fire.
Guidry also determined the fire started in the area of the range top. Guidry concluded there was an accelerated fire that *636 started with an unidentified flammable material in the frying pan which was allowed to vaporize to the underside of the pan to a flame on the burner. Guidry opined the fire then progressed into the attic through a punched hole in the ceiling. Guidry classified the fire as simple arson where combustibles within the kitchen and attic were arranged in a manner to cause ignition with propagation from a human source or, in other words, was intentionally set. Based on his investigation, Guidry obtained an arrest warrant for defendant. Defendant was arrested in September 2001, approximately twenty months after the fire.
At trial, defendant presented the testimony of LaDon Richardson, an expert in the cause and origin of fires and explosions.[3] He testified the evidence was inconsistent with an accelerated fire and opined the fire started in the attic. Although he could not determine what caused the fire, Richardson stated there was no evidence the fire was intentionally set.
Additionally, Richardson noted nothing was moved out of the house in preparation for a fire. Defendant's wife, Cheryl Sosa, testified there were many sentimental and important items in the house such as birth and death certificates, awards, and graduation pictures. Mrs. Sosa also stated the house had been extensively renovated in 1995 including a new roof, plumbing, ceramic tiles and all new appliances. Mrs. Sosa further testified she and defendant had no financial problems at the time of the fire. Guidry agreed during his testimony that defendant was not in any type of financial trouble. Mrs. Sosa stated she and defendant had a combined monthly salary of $5,000 per month, had money in stocks and a savings account, had no lawsuits or liens against them, were not behind in their mortgage, had all five of their vehicles paid for, and were not behind in credit card payments. Mrs. Sosa also noted that while Allstate Insurance paid $90,000 as a result of the fire damage, she and defendant still had to pay between $30,000 and $40,000 out-of-pocket to pay for the repairs.

LAW
On appeal defendant assigns four errors. In his first assignment of error, defendant argues there was insufficient evidence to support his conviction for arson with intent to defraud. This assignment of error must be addressed first because when the entirety of the evidence is insufficient to support the conviction, the accused must be discharged as to that crime, and any issue regarding trial errors becomes moot. State v. Conner, 02-363 (La.App. 5 Cir. 11/13/02), 833 So.2d 396, 401.
Defendant contends the State failed to rule out all other reasonable hypotheses of innocence and did not prove beyond a reasonable doubt that he intentionally set the fire. He points out the disagreement among the experts as to whether the fire was intentionally set and challenges the basis of the State's expert witnesses' opinions. The State responds the jury made credibility determinations and obviously believed the State's experts that the fire was intentionally set.
In determining a challenge to the sufficiency of the evidence, the reviewing court must decide whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime beyond a *637 reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "The requirement that the evidence be viewed in the light most favorable to the prosecution obliges the reviewing court to defer to `[t]he actual trier of fact's rational credibility calls, evidence weighing and inference drawing.'" State v. Marcantel, 00-1629 (La. 4/3/02), 815 So.2d 50, 56, quoting State v. Mussall, 523 So.2d 1305, 1311 (La.1988) (emphasis as found in the original).
When the trier of fact is confronted by conflicting testimony, the determination of that fact rests solely with that judge or jury, who may accept or reject, in whole or in part, the testimony of any witness. State v. Cazenave, 00-183 (La.App. 5 Cir. 10/31/00), 772 So.2d 854, 860, writ denied, 00-3297 (La.10/26/01), 799 So.2d 1151. It is not the function of the appellate court to assess the credibility of witnesses or to re-weigh the evidence. Id.
Evidence may be either direct or circumstantial. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Harris, 03-1297 (La.App. 5 Cir. 3/30/04), 871 So.2d 599, 609-610, writ denied, 04-1287 (La.10/29/04), 885 So.2d 583, and writ denied, 04-1289 (La.10/29/04), 885 So.2d 584. In cases involving circumstantial evidence, the trial court must instruct the jury that "`assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.' La.R.S. 15:438." Id. at 610. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by defendant offers an exculpatory explanation of the events, but rather the reviewing court must "determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt." State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83 (emphasis as found in the original).
Arson with intent to defraud is defined as "the setting fire to, or damaging by any explosive substance, any property, with intent to defraud." La.R.S. 14:53. The intent to defraud element requires specific intent. State v. Porter, 454 So.2d 220, 225 (La.App. 3 Cir.1984), writ denied, 457 So.2d 17 (La.1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985). Specific intent is defined in La.R.S. 14:10(1) as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Woodhead, 03-1036 (La.App. 5 Cir. 1/27/04), 866 So.2d 995, 999, writ denied, 04-0598 (La.7/2/04), 877 So.2d 144.
In the present case, there were no direct witnesses to the actual culpable act; therefore, the State was required to prove its case by circumstantial evidence. Defendant challenges the sufficiency of the evidence as it pertains to the first element of the crime, that the fire was intentionally set.
In its case against defendant, the State played a surveillance videotape of defendant's home that was taken the morning of the fire. The jury was told defendant's home was placed under surveillance two days prior to the fire and had been "flagged" with Fire Alarm Headquarters.[4] *638 The videotape showed defendant exited his home at 7:08 a.m., placed something in his pickup truck, and returned inside. He again exited his home at 7:14 a.m., loaded something into the trunk of his wife's Impala, and returned inside. Defendant finally left his home at 7:21 a.m. in his pickup truck. The videotape then appeared to show that the last person, presumably one of defendant's sons, left the residence shortly after 8:00 a.m.
There was no activity until 10:53 a.m. when the videotape showed defendant arriving home and walking into his house. At 11:01 a.m., defendant is seen exiting his house with something under his left arm and driving away in his pickup truck. Smoke is visible from the residence at 11:53 a.m.
Dennis Guidry, an investigator with the Jefferson Parish Arson Investigation Unit who qualified as an expert in the field of cause and origin of fires, testified for the State. Guidry investigated the fire and concluded the fire was intentionally set by someone placing an accelerant in a pan next to the stove. Guidry based his opinion on the burn patterns he physically observed when he investigated the fire. He explained there was a "V" burn pattern above the stove top which indicated an accelerated fire that burned with a great deal of energy. He also noted the knob on the right front burner was in the "high" position. Guidry further stated he believed a hole was punched in the ceiling to allow the fire to spread into the attic. He explained the fire was not intense enough to burn a hole through the ceiling and spread into the attic as evidenced by the lack of a "flashover" effect in the kitchen.[5]
Guidry stated defendant cooperated with the investigation. He testified he advised defendant of his rights and spoke to defendant at the scene about his whereabouts prior to the fire. Guidry noted a discrepancy between defendant's statement that he passed by his house mid-morning but did not stop and the videotape that showed defendant actually stopped and entered his home. Defendant's wife explained that in defendant's Puerto Rican culture "passed by" means to stop and go in.
On cross-examination, Guidry stated his theory of the fire was that the accelerant in the pan ignited from the burner on the right front side of the stove. He explained the burn pattern indicated the pan with the accelerant was not directly on the stove at the time of the fire but was likely next to the burner on the countertop. Of note, Guidry testified a pot containing food on the right burner of the stove did not burn. Guidry was unable to identify the accelerant used but stated it was not unusual not to be able to determine an exact accelerant.
Guidry stated he did not preserve the pan that he thought contained the accelerant for testing because he thought it was too severely burned. He opined that any accelerant in the pan probably burned away. He admitted he did not smell any accelerant during his investigation but explained the lack of smell did not mean an accelerant was not present. He further admitted he did not test anything in the house for the presence of an accelerant, did not search defendant's vehicle for an accelerant, and did not test defendant's *639 clothes or shoes for an accelerant. When asked about the fifty-minute time-delay between defendant exiting the home and the start of the fire, Guidry replied "[it] was a pretty ingenious time delay."
Guidry was then questioned about his conclusion that the fire did not start in the attic. He stated he found no ignition source in the attic and maintained his belief that a hole was placed in the ceiling. Guidry admitted he had no evidence defendant punched a hole in the ceiling. He further admitted the gas lines that ran parallel above the stove were never investigated as the cause of the fire but explained it was because there was no indication there was a gas system failure.
The State also presented the testimony of John Springer, an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, who also qualified as an expert in the field of cause and origin of fires. Springer investigated the fire with Guidry and testified the fire did not appear to be a "normally progressing fire." He believed the fire started along the east wall of the kitchen and spread to the attic through an unnatural hole in the ceiling or a second fuel package placed in the attic. He concluded the fire was intentionally set but could not say how it was set. He based his conclusion on the fact there did not appear to be normal fire progression. He acknowledged Guidry's theory that the fire started as a result of a flammable liquid in the frying pan but testified he did not form that opinion. Springer repeatedly testified that he did not know how the fire started but consistently stated the fire did not start in the attic.
Robert Alonzo, an electrical engineer, also testified for the State. He stated he was asked to examine the wiring and appliances at the residence to see if they caused the fire. He inspected the property and concluded there was no evidence that the electrical wiring or appliances started the fire or provided the ignition source for the fire. Alonzo specifically stated he did not see any evidence of any short circuits or faulty wiring in the attic. On cross-examination, Alonzo admitted his examination of the electrical wiring in the attic was limited to his view of the wires from the floor looking up.
In response to the State's witnesses that concluded the fire was intentionally set, defendant presented the testimony of LaDon Richardson, a former ATF agent who qualified as an expert in the cause, effect and origin of fires and explosives. He concluded the fire started in the attic and spread downward through a fall down effect. He determined the fire was not intentionally set but could not state the cause of the fire. Richardson explained his opinion was based on his review of various documents provided to him including the Jefferson Parish Arson Investigation reports, fire scene photos, Alonzo's report, defendant's deposition, and the surveillance videotape of defendant's home the morning of the fire. Richardson admitted he did not physically inspect the fire damaged property.
Richardson questioned the conclusion that an accelerant was used in the fire. He specifically noted that a fifty-minute time lapse between defendant leaving the house and the start of the fire was inconsistent with an accelerated fire. He testified that a person cannot expect to set an accelerant close to an open flame and not expect it to ignite for fifty minutes. Richardson stated a "flashover" condition would have occurred in the room in one to three minutes with the use of an accelerant. He noted the State's expert could not explain the fifty-minute delay. Richardson further challenged the accelerant theory on the lack of accelerant collected from the scene.
*640 The record clearly establishes the experts disagreed as to whether this was an intentionally set fire. The experts were also unable to come to a consensus as to the cause of the fire, with only one of the three experts concluding the fire was caused by an accelerant. Even assuming the jury was rational in concluding the fire was intentionally set, the State still had to prove defendant set the fire with the intent to defraud. The record appears to lack any evidence of this element.
The record shows defendant made an insurance claim with Allstate for $117,000 after the fire and received $90,000. Cheryl Sosa, defendant's wife, testified the insurance money was not enough to pay for the repairs and that she and defendant had to use approximately $30,000-$40,000 of their own money to complete the repairs. Guidry had testified that defendant's background check did not reveal defendant was in any type of financial trouble. He stated defendant had sufficient income, with a combined income of $4,000-$5,000 per month. Guidry also testified that defendant did not seem nervous during the investigation.
Ms. Sosa testified she and defendant signed forms authorizing a check of their personal records. She stated she and defendant did not have any financial problems at the time of the fire. She confirmed their monthly income as $5,000 per month and noted they had stocks as well as money in a savings account. Ms. Sosa testified they had never filed bankruptcy, had no lawsuits or liens pending against them, were not behind in their mortgage, had all five of their vehicles paid for, and were not behind in their credit card payments.
Ms. Sosa also testified that the house had been remodeled in 1995 with a new roof, plumbing, ceramic tiles throughout, and new appliances. She indicated the replacement appliances were not as good of quality as those that were fire damaged. Ms. Sosa further stated that many important documents and sentimental items were left in the home such as birth and death certificates, graduation pictures, and awards. Guidry agreed that everything in the house looked in order with pictures present. The entirety of Ms. Sosa's testimony was uncontroverted.
There does not appear to be any evidence from which a rational trier of fact could infer defendant possessed specific intent to defraud. In State v. Porter, 454 So.2d 220 (La.App. 3 Cir.1984), writ denied, 457 So.2d 17 (La.1984), cert. denied, 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985), the Third Circuit addressed the sufficiency of the evidence with regard to the element of specific intent to defraud in an arson offense. The defendants were insured for $76,500 and made a claim for $69,750. The court noted the defendants had "lost very heavily" in the logging business approximately three years before the fire at issue and had received some past due notices on a loan the year before the fire. The court also noted the defendant had consolidated various loans with their bank into one loan of $20,000. The bank vice-president and manager had testified he would not have loaned the defendants more than $20,000. Based on these financial indicators, the Third Circuit found that the defendants possessed the specific intent to defraud their insurer.
Also, in State v. Long, 93-142 (La.App. 3 Cir. 10/6/93), 625 So.2d 377, the Third Circuit found sufficient evidence to uphold the husband's conviction for arson with intent to defraud.[6] The court noted numerous *641 liens and lawsuits had been filed against the defendants, that the husband's contractor's license had been revoked and he could not contract work valued over $50,000, that the husband was delivering newspapers clearing $600-$700/month, that the wife had lost her job and owed her employer close to $24,000 on a promissory note, and that the defendants could only pay sixty percent of their monthly debts. The court also noted the defendants sought debt counseling but did not make agreed upon payments to the counseling service for payment to their creditors. The court concluded the record supported a finding that the defendants were undergoing serious financial difficulties and that the insurance proceeds would have covered many of their debts.
On the other hand, in State v. Leger, 00-0920 (La.App. 3 Cir. 12/20/00), 775 So.2d 1169, writ denied, 01-0240 (La.3/15/02), 811 So.2d 894, the Third Circuit did not find the evidence sufficient to prove the defendant had the necessary intent to defraud as required for a conviction under La.R.S. 14:53. The court noted that the defendant had borrowed $23,929.50 from a bank which was to be repaid over a three-year period. Although the defendant had been delinquent in her payment on numerous occasions, the court found her payments were current at the time of the fire. The court ultimately held there was insufficient evidence to prove defendant started the fire but specifically stated the evidence presented by the State relative to the intent to defraud element was unpersuasive.
In the present case, there does not appear to be any evidence that defendant had the requisite intent to defraud his insurer. There was no evidence of any financial troubles and no indication the defendant intended to use the insurance money for his betterment. Thus, even assuming the evidence supports a finding the fire was intentionally set, the State failed to prove the second element of the crime, or the intent to defraud.
Because we find insufficient evidence to support the conviction and sentence in this matter, we pretermit any discussion of any additional assignments of error raised by defendant. Therefore, defendant's conviction and sentence are hereby reversed.
REVERSED.
NOTES
[1] The original bill of information contains a handwritten amendment dated December 12, 2002 changing the charge to arson with intent to defraud. The State subsequently filed a new bill of information on January 14, 2003 containing the amended charge.
[2] ATF refers to the Bureau of Alcohol, Tobacco, Firearms and Explosives.
[3] Of note, both Springer and Guidry were qualified as experts in the field of cause and origin of fires.
[4] There was no evidence as to why the defendant's home was under surveillance other than the prosecutor's questioning of defendant's wife on cross-examination as to whether she told someone defendant said he planned to burn down his house to get insurance money. Defendant's wife denied the question.
[5] "Flashover" was explained as being a condition where the entire room burns by the build up of hot gasses which ignites objects throughout the room.
[6] State v. Long, supra, involved the convictions of a husband and wife for arson with intent to defraud. The Supreme Court subsequently granted the wife's application for writs and ultimately reversed her conviction finding there was not enough evidence to find she was "concerned" in the commission of arson so as to make her a principal to arson. State v. Long, 94-0092 (La.9/16/94), 643 So.2d 132. The Supreme Court's subsequent opinion did not reverse the husband's conviction or any portion of the original appellate opinion regarding the husband's conviction.