775 So.2d 1169 (2000)
STATE of Louisiana
v.
Jacqueline LEGER.
No. 00 00920-KA.
Court of Appeal of Louisiana, Third Circuit.
December 20, 2000.
*1170 Angelo Joseph Piazza, III, Attorney at Law, Marksville, LA, Counsel for Jacqueline Leger.
Hon. Jerold Edward Knoll, The Knoll Law Firm, Marksville, LA, Counsel for State of Louisiana.
Court composed of ULYSSES G. THIBODEAUX, OSWALD A. DECUIR, and JIMMIE C. PETERS, Judges.
PETERS, Judge.
The defendant, Jacqueline Leger, was charged by bill of information with the crime of arson with intent to defraud, a violation of La.R.S. 14:53. A jury convicted her of the charge, and the trial court then sentenced her to serve five years at hard labor. The trial court suspended the sentence, placed the defendant on five years supervised probation, and ordered her to pay $24,870.60 in restitution. The defendant appealed her conviction, asserting in her sole assignment of error that the evidence was insufficient to support her conviction. For the following reasons, we reverse the conviction and render a judgment of acquittal.
Louisiana Revised Statute 14:53 provides in part that "[a]rson with intent to defraud is the setting fire to, or damaging by any explosive substance, any property, with intent to defraud." The defendant asserts that the evidence presented at trial was insufficient to support her conviction because the state did not prove the fire resulted from arson. In the alternative, even if the fire did result from arson, she asserts the state did not prove she committed the crime.
When the sufficiency of the evidence is raised on appeal, this court must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reviewing the evidence, this court must keep in mind that it is the fact finder's role to weigh witness credibility, and we should not second-guess those credibility determinations beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). However, "Due Process requires the reviewing court to determine `whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988) (quoting Jackson, 443 U.S. at 319, 99 S.Ct. at 2789).
In Mussall, the supreme court discussed the role of a reviewing court in applying the Jackson analysis:
The Jackson v. Virginia doctrine involves more than simply applying a fixed standard to measure the simple quantum of the evidence produced in a case. Careful study must be given to both the majority and concurring opinions to fully understand the precise methodology which must be followed to determine objectively whether any rational trier of fact would have had a subjective doubt about the defendant's guilt. First, a *1171 review of a criminal conviction record for sufficiency of evidence does not require a court to "`ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Second, a reviewing court must consider the record through the eyes of a hypothetical rational trier of fact who interprets all of the evidence as favorably to the prosecution as any rational fact finder can. Third, the inquiry requires the reviewing court to ask whether such a hypothetical rational trier of fact interpreting all of the evidence in this manner could have found the essential elements of the crime beyond a reasonable doubt.
The principal criterion of a Jackson v. Virginia review is rationality. This is because under Winship and Jackson Fourteenth Amendment due process demands that in state trials, as has been demanded traditionally in federal trials, a criminal conviction cannot constitutionally stand if it is based on a record from which no rational trier of fact could find guilt beyond a reasonable doubt. Accordingly, under the Jackson methodology a reviewing court is required to view the evidence from the perspective of a hypothetical rational trier of fact in determining whether such an unconstitutional conviction has occurred. In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all of the evidence, and the actual trier of fact is presumed to have acted rationally until it appears otherwise. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, irrational decisions to convict will be overturned, rational decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.
Id. at 1309-10 (quoting Jackson, 443 U.S. at 318-19, 99 S.Ct. at 2789) (footnotes omitted).
Because the principal criterion of a Jackson review is the concept of rationality, we must view the evidence from the perspective of a hypothetical rational trier of fact. See id. In other words, we must do more than determine if the record contains testimony which tends to support each fact necessary to be proven in order to establish the elements of the crime charged. We have to determine if a "rational trier of fact viewing all of the evidence from a rational pro-prosecution standpoint could have found guilt beyond a reasonable doubt." Id. at 1311. If we cannot so determine, then the conviction "cannot stand constitutionally." Id.
It is not disputed that, on the afternoon of December 14, 1998, a house trailer owned by the defendant and situated on her property in Marksville, Louisiana, was severely damaged by fire. The state presented the testimony of three experts: Michael Neck, who investigated the scene on behalf of the Louisiana State Fire Marshall's Office; Ed Morgan, a Jackson, Mississippi fire cause and origin expert; and Robert Newell, an electrical engineer and fire investigator. These experts were of the opinion that the fire resulted from the ignition of a combustible liquid that had been poured onto the floor. They reached this conclusion despite the fact that floor samples from the structure submitted to the Louisiana Crime Laboratory in Baton Rouge, Louisiana, contained no traces of a combustible liquid. According to the three experts, it would not be unusual for all traces of the flammable liquid to be consumed in the resulting fire. They based their opinions primarily on their evaluations of the physical damage at the scene of the fire.
The defendant's cause and origin expert, David Cousino of Lafayette, Louisiana, testified that the burn pattern found in the house trailer was consistent with radiant heat rather than the ignition of a flammable *1172 liquid. It was his opinion that an electrical outlet malfunctioned, starting the fire, and that the counter area in the kitchen acted as a kind of "hotbox" or "firebox" that spread the fire much like heat in an oven. However, the jury obviously accepted the expert opinions of the state's witnesses and concluded that the fire was the result of arson. Applying the Jackson standard, we find no error in that conclusion.
There is no direct evidence that links the defendant to the fire. When the fire was first noticed, no one was present in the house trailer. Edward J. Walker, who lived directly across the street from the defendant, testified that, at approximately 3:30 p.m., his wife told him that she observed smoke coming from the direction of the house trailer. However, Walker did not respond until minutes later when Ray Dupuy, who lived in the same neighborhood, knocked on his door to tell him that he too had observed smoke coming from the defendant's house trailer. Dupuy, who was on his way to a store to pick up some items when he observed the smoke, informed Walker of what he had seen and asked that the fire department be notified. Walker then instructed his wife to contact the fire department while he and Dupuy went to investigate the smoke. As they peered into the house trailer through the rear sliding glass door, they observed a fire spreading through the interior of the trailer. When the firemen arrived, Walker alerted them to the fact that the defendant had an extra key hidden outside the trailer, and the firemen used that key to enter the trailer and extinguish the flames. The fire department report reflects receipt of a call for assistance at 3:35 p.m.
The only testimony remotely connecting the defendant to the scene of the crime concurrently with the fire's beginnings was that of Walker. He testified that he had observed a small white car similar to the defendant's leaving the neighborhood at approximately 3:30 p.m., or just moments before his wife commented about the smoke. However, he acknowledged that he did not see the occupant or occupants in the vehicle, that he could not positively identify the vehicle as being the defendant's, and that he only assumed it was hers. He also testified that the car was not in a hurry or traveling at a high rate of speed.
On the other hand, the defendant testified that she left home at approximately 3:00 p.m. According to the defendant, she had been babysitting when she received a call from her employer, Simmesport Piggly Wiggly grocery store, to come to work in place of another cashier. She then drove approximately five minutes to the home of Dulcey McNeal, the great-grandmother of the child she had been babysitting; visited there for approximately ten minutes; and then went to Tobacco Plus to purchase cigarettes. After waiting a few minutes for service, she then drove the thirty-minute trip to Simmesport, arriving at work at approximately 4:05 p.m. Juanita Smith, a coworker, corroborated her arrival time.
Additionally, Walker and Dupuy testified that the neighborhood had been the scene of numerous acts of vandalism in the time period of the crime. Tommy Lachney, Jr., and Chris Lachney, Jr., who lived near the defendant; Faye Baudin, a friend and distant cousin of the defendant, who stayed with the defendant on occasion; and Phillip Normand, a patrolman for the City of Marksville, also testified concerning acts of vandalism in the area. In fact, the defendant herself had been a victim of this vandalism on more than one occasion. Furthermore, while the door to the trailer was locked at the time of the fire, it appeared to be common knowledge that the defendant kept a spare key outside the trailer such that others could have had access to the structure.
Moreover, the defendant's belongings were in the house trailer at the time of the fire, including family pictures. The items that were missing from the house trailer at the time of the fire were all but one of her fiancé's guns. Notably, there was much *1173 testimony regarding the defendant's anguished state after the fire, including that of Ned Bordelon, the fire chief, who testified that, when the defendant arrived at the scene of the fire, "she went hysterical.... [S]he was wild and hollering and screaming...."
Even the evidence presented by the state relative to the intent-to-defraud element was not persuasive. James Firmin, a loan officer with The Union Bank, testified that the defendant had borrowed $23,929.50 from the bank in November of 1995 and pledged the house trailer as security for the loan. In the loan agreement, the defendant agreed to repay the loan in equal monthly installments of $264.87 over a three-year period, with a final "balloon" payment of the balance due at the end of the primary term. However, Firmin testified that the bank fully anticipated refinancing the balloon balance and did not expect the defendant to pay it in full at the end of the three-year primary term. The defendant's payment record with the bank revealed that her monthly payments had been delinquent numerous times over the three-year term. On at least eleven occasions, her payment was over thirty days late. However, despite the tardy nature of her payments, her payments were current as of December 2, 1998.
Firmin also testified initially that the defendant failed to maintain fire insurance on the mortgaged property during a part of 1997, and the bank purchased a policy to protect its interests. The annual premium on the policy purchased was $1,400.00. However, he acknowledged that, a short time later, the defendant furnished the bank with a policy of insurance, and the bank refunded her $826.00 of the original premium. When the fire occurred, the defendant had maintained coverage with State Farm Insurance Company for over one year.
Thus, all the evidence implicating the defendant as the person who started the fire was circumstantial.
When circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982); State v. Chism, 436 So.2d 464 (La.1983). Additionally, La.R.S. 15:438 provides: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence."
State v. Bullitts, 99-515, p. 4 (La.App. 3 Cir. 11/3/99); 746 So.2d 260, 262.
In light of the defendant's testimony regarding her whereabouts and the corroboration of that testimony, the history of vandalism in the area, the ability for someone to have entered the house trailer with the spare key, and the defendant's actions which were inconsistent with having started the fire, we do not find that the evidence of the unidentified white car was sufficient to exclude every reasonable hypothesis of innocence in this case as to the identity of the person who started the fire. As such, the conviction must fall.

DISPOSITION
For the foregoing reasons, we reverse the defendant's conviction and sentence and enter a judgment of acquittal.
REVERSED AND RENDERED.