921 So.2d 94 (2006)
STATE of Louisiana
v.
Ruben SOSA.
No. 2005-K-0213.
Supreme Court of Louisiana.
January 19, 2006.
Rehearing Denied March 10, 2006.
*95 Charles C. Foti, Jr., Attorney General, Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Assistant District Attorneys, for applicant.
Ansardi, Maxwell & Power, James D. Maxwell, Kurt C. Garcia, Kenner, for respondent.
CALOGERO, Chief Justice.[*]
We granted the writ application filed by the State of Louisiana to address the *96 merits of the court of appeal's decision which reversed the defendant's conviction and sentence for arson with intent to defraud, the court of appeal having decided the case in favor of the defendant upon finding that the state had failed to prove a specific intent to defraud. After reviewing the decision below, we find the court of appeal erred in its assessment of the sufficiency of the evidence. If the jurors could have rationally found that the defendant had intentionally set the fire in his kitchen to burn his home, then those jurors could also have rationally found that the defendant had done so with the intent to defraud his insurer on the basis of his filing the subsequent claim that resulted in an initial payout of $90,000. In this circumstantial evidence case, the jurors, when they returned their verdict of guilt, clearly rejected the defendant's hypothesis of innocence, presented in defense counsel's closing argument, that he had had no motive to defraud his insurance company. Because after reviewing the record we find the evidence sufficient to support the jury's verdict of guilty of arson with intent to defraud, we reverse the court of appeal's decision and remand the case for consideration of the defendant's assignments of error pretermitted by the appellate court.

FACTS
The defendant, Ruben Sosa, was charged with arson with the intent to defraud, a violation of La.Rev.Stat. 14:53. The trial was conducted over three days, and thereafter, a six-person jury found him guilty as charged. The trial court sentenced him to serve five years imprisonment, but it ordered the first two years to be served on home incarceration and suspended the remaining three years. The court then placed the defendant on active probation and ordered him to pay restitution within five years. On appeal, the Fifth Circuit reversed the defendant's conviction and sentence, on the basis that the evidence was insufficient to prove that he had possessed the specific intent to defraud when he set the fire, and pretermitted the defendant's remaining assignments of error. State v. Sosa, 04-0507 (La.App. 5 Cir. 12/28/04), 892 So.2d 633, 641. We granted the state's writ application to determine the correctness of that ruling. 05-0213 (La.5/6/05), 901 So.2d 1078.
At trial, Dennis Guidry, an officer with the Jefferson Parish Arson Investigation Unit, testified that in response to information he received about the defendant, the Bureau of Alcohol, Tobacco, and Firearms and Explosives (ATF), installed on January 24, 2000, a surveillance camera to monitor the defendant's home. Officer Guidry also had "flagged" the defendant's address with the Fire Alarm Headquarters, which meant that the on-call investigator was to be notified anytime there was a response to the address. Two days later, a fire broke out at the defendant's home.
At that time, Officer Guidry notified ATF Agent John Springer, who also participated in the investigation. According to Officer Guidry, when he arrived at the scene, he advised the defendant of his Miranda rights and informed him that he was under investigation. Officer Guidry testified that the defendant stated that he had left the house around 7:30 a.m. and that he "passed by" the house at 10:30 a.m., but that he did not stop or go inside. However, unbeknownst to the defendant, the surveillance videotape showed him entering his house at 10:53 a.m. and exiting at 11:01 a.m. Around 11:50 a.m., the videotape also showed an automobile, similar to the one driven by the defendant's wife, *97 pass in front of the home, slow down, and then continue down the street. Smoke from the house was noticed at approximately 11:53 a.m.
The defendant gave consent to search his residence, which Officer Guidry and Agent Springer conducted. Both believed that the heaviest fire damage occurred in the kitchen. Officer Guidry and Agent Springer, who were qualified as experts in the field of cause and origin of fires, testified that they determined the fire started at the east wall of the kitchen near the gas range and that it spread into the attic by an unnatural hole in the ceiling. As a result, it did not appear that the fire had progressed normally. In their opinion, the fire was intentionally set.
First, Agent Springer testified that the fire began in the kitchen area and was purposely set, possibly by the use of a flammable material placed in the frying pan which was left on the stove top, and that the "knob to the south side of the range was in an on position." He elaborated:
Now, for a fire to spread from the kitchen area into the attic, the room would have had to reach a condition that we talked about earlier called flashover, where it's total room involvement, weakening the sheetrock on the ceiling. It would have been a long duration fire causing the sheetrock to weaken and possibly collapse. Then, that would allow penetration  a normal penetration from the kitchen into the attic space. However, the room didn't go into flashover. There were light weight combustible material still on the wall. The fire in the kitchen was not of the intensity enough to cause the ceiling to fall under normal conditions. There was a fire in the attic, which leads to my opinion that the fire in the attic spread from the kitchen, on the area of the range, up into the attic either by an unnatural hole being placed in the ceiling or an unnatural hole being placed in the ceiling and a second fuel package being placed up in the attic.
Agent Springer then described the unnatural hole created in the ceiling, which he referred to as a "mechanical breach":
[A] mechanical breach caused by someone intending the fire to spread from the kitchen into the attic space because there was not enough energy from the fire to cause a natural breach to the ceiling due to the fire. The breach of the ceiling would have had to have been done intentionally.
Finally, the agent concluded with his opinion that the fire was intentionally set:
I[al]luded to it earlier whenever I said I first went to the fire scene and it did not appear to be normal fire progression ... There are certain normal progressions that take place in the course of a fire. With the fire damage that I observed on the counter top next to the range, if that fire would have been a normal fire progression, it would have burned  it would have continued burning. The cabinets would have become involved. There would have been more of hot gases placed up on the ceiling level. It would have caught the wicker baskets and papers that were around on the wall on fire. You would have had drop down from those wicker baskets into the  onto other counter tops. You would have had the room become fully involved in fire and then the fire would have spread laterally throughout the house and not just been confined to the kitchen. The fire would have gotten very intense, and eventually, if left unsuppressed, it would have penetrated into the attic and eventually the house would have burned down. As it was, there was fire suppression. The fire in the kitchen *98 was not of an intensity enough to penetrate the attic under normal conditions.
Officer Guidry's testimony echoed Agent Springer's conclusions. During his testimony discussing the origins of the fire, Officer Guidry opined that the fire most likely started from a flammable material added to a pot on the stove which was left on. Officer Guidry then stated:
I think, based on my experiences and given what we had on the scene here, it appeared to me that we had some sort of material in this frying pan that was allowed to vaporize. Some sort of flammable material that was allowed to vaporize and allow those vapors to track over to the pot  or at least the flame under the pot on the front right side of the stove. Any number of things that give off a vapor could have caused that.
Next, the state called Robert Alonzo, an electrical engineer, who was contacted by Agent Springer and asked to inspect the electrical wiring in the house to determine if that was the cause of the fire. He inspected the house two days after the fire, and he concluded that there were no problems with electrical wiring and that this was not a contributing factor to the fire.
On the other hand, defense expert, LaDon Richardson, a former ATF officer and an expert in the field of cause and origin of fires, testified that he did not believe there was evidence that the fire was intentionally set and stated that the evidence was inconsistent with an accelerated fire. He believed the fire started in the attic, although he could not determine what caused the fire.
The defense also called Cheryl Sosa, the defendant's wife, who testified that the house had been renovated in 1995, which included a new roof, plumbing, ceramic tiles and new appliances. She stated that her family did not have any financial problems, and that she and her husband had a combined income of some $5,000 a month. She testified that they were not behind in their mortgage or on any credit card payments, and that all five of their vehicles were paid in full. The Sosas initially received $90,000 from Allstate Insurance Company for the fire damage, but Ms. Sosa claimed that they had had to spend an additional $30,000 to $40,000 in out-of-pocket expenses to repair the house sufficiently after a dispute with the contractors and the insurer. The Sosas eventually settled with their insurer for $117,000.
According to Ms. Sosa, on the day of the fire, she cooked breakfast for her three sons and husband. Her workplace was located only minutes away from their home, so she usually had lunch with her husband at home. That day, however, she went out to lunch with her husband, who picked her up from her workplace. After they had lunch, they went to a sporting goods store together, and while there, they received a phone call from their son who informed them of the fire. When questioned about the videotape that displayed a car similar in color and style to her own driving past their house, slowing down, and then continuing down the street before the fire was visible on the outside, she denied it was her car.

DISCUSSION
On the appeal of his conviction to the Fifth Circuit, the defendant argued that the state presented insufficient evidence to support his conviction for arson with intent to defraud, primarily because there was no evidence that the defendant himself had intentionally set the fire in his home. The appellate court agreed the evidence was insufficient to support the jury's verdict, but it more particularly reasoned that the state's failure to prove the defendant had possessed the specific intent to *99 defraud warranted reversal of the conviction and sentence. Sosa, 04-507 at p. 13, 892 So.2d at 641. The state argues before this court that the Fifth Circuit misapplied the Jackson v. Virginia standard and substituted its own view of the facts for that of the jury's. We agree.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier-of-fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676, 678 (La. 1984). Additionally, when circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove... must exclude every reasonable hypothesis of innocence." La.Rev.Stat. 15:438; see State v. Jacobs, 504 So.2d 817, 820 (La.1987)(all direct and circumstantial evidence must meet the Jackson v. Virginia test); State v. Porretto, 468 So.2d 1142, 1146 (La.1985) (La.Rev.Stat. 15:438 serves as an evidentiary guide for the jury when considering circumstantial evidence).
To support a conviction for arson with the intent to defraud, the state must prove that the defendant set "fire to, or damag[ed] by any explosive substance, any property with the intent to defraud." La. Rev.Stat. 14:53. Specific intent may be inferred from the circumstances and actions of the defendant. State v. Graham, 420 So.2d 1126, 1127 (La.1982). Whether a defendant possessed the requisite intent in a criminal case is for the trier-of-fact to determine, and a review of the correctness of this determination is guided by the Jackson v. Virginia standard. State v. Huizar, 414 So.2d 741, 751 (La.1982).
In this case, the court of appeal overlooked the principle of review that in cases involving circumstantial evidence, when a jury rationally rejects the hypothesis of innocence advanced by the defendant, that hypothesis fails, and "the defendant is guilty unless there is another hypothesis which raises a reasonable doubt," i.e., an "alternative hypothesis ... sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt." State v. Captville, 448 So.2d at 680(internal quotation marks and citation omitted). By subscribing to a hypothesis of innocence clearly rejected by jurors, the court of appeal necessarily found that the trier of fact had not acted rationally in returning its verdict that the defendant had acted with the specific intent to defraud. However, our review of the evidence establishes that the jury did not act irrationally in rejecting the defendant's hypothesis that he had no financial motive and, thus, possessed no intent to defraud his insurer when he set the fire in his home.
The defense's theory of the case at trial took two approaches: that the evidence did not establish that he had set the fire and that he had had no financial motive for setting such a fire. In his closing argument, as he does in brief before this court, defense counsel first argued that the investigation into the origin and cause of the fire was flawed. Counsel suggested that, with respect to the origin of the fire and whether it had been intentionally set, the defense expert was more credible, on account of his education and experience, than the experts presented by the state. Counsel pointed to the fact that Officer Guidry never took samples of the wiring or of other items in the kitchen, such as the pans on the stove, for subsequent testing in a laboratory. Counsel also noted that Officer Guidry failed to take statements *100 from the Sosas, to search their vehicles, or to test Mr. Sosa's clothing. Defense counsel contended the state had failed to prove that the defendant had set the fire, noting that the surveillance camera was not trained on other entrances to the home, whereby the actual arsonist may have gained entry. Finally, with regard to the intent to defraud, defense counsel asserted that the defendant had had nothing to gain from setting the fire, noting that the Sosas had plenty of income and were current in their mortgage and other bill payments.
Turning to the evidence with the Jackson v. Virginia standard in mind, we first find that the evidence supports the jury's finding that the fire had been intentionally set. As the appellate court itself noted, the state and defense experts disagreed over whether the fire was intentionally set. Sosa, 04-507 at 11, 892 So.2d at 640. Yet, all three witnesses agreed that observing and assessing the scene in person, as Guidry and Springer did, rather than via photographs, as Richardson did, was the preferable approach to investigating the fire's origin and cause. Both Guidry and Springer, the state's experts, opined that the fire was not a normally-progressing fire and that it had been intentionally set, at least initially in the kitchen, even though the accelerant used was not known. On the other hand, the opinion testimony of Richardson, the defense expert, fell short of concluding the instant fire was an accident. Instead, he believed that the investigation was not properly carried out and that the results of the investigation were inconclusive as to the cause or whether an accelerant was used in the fire.
We do not find that the testimony of the state's experts invited the jury to speculate as to the defendant's guilt, because both witnesses testified that the fire was intentionally set, even if the precise method of doing so was not clearly known. The opinions of the experts who testified at trial clearly conflicted, yet nothing in the record suggests the jury acted irrationally making credibility decisions, weighing the evidence, and ultimately accepting the opinion testimony of the state's experts over that of the defendant's expert.
We also find that the record evidence, viewed in a pro-prosecution light, supports the jury's finding that it was the defendant, Ruben Sosa, who had set the fire in his residence. Two days prior to the fire at the Sosa home, the ATF had set up a surveillance camera across from the home. On the day of the fire, the defendant was shown to be the last person in the home, at 11:01 a.m., before the fire became evident at 11:53 a.m. to neighbors who summoned the fire department. Although defense counsel suggested that some other person could have set the fire after gaining entrance to the residence from another door or window, the evidence, including the defendant's apparent misrepresentation about not having entered the home when he "passed by" it earlier that morning, was such that the jury could rationally infer, beyond a reasonable doubt, that the defendant was the person who had set the fire. Accordingly, the defendant's argument before this court, that the evidence failed to show that he had set the fire, lacks merit.
We next find that the evidence supports the jury's finding that the defendant had possessed the specific intent to defraud when he set the fire in his residence. The court of appeal found to the contrary, reasoning that "there was no evidence of any financial troubles and no indication the defendant intended to use the insurance money for his betterment." Sosa, 04-507 at p. 13, 892 So.2d at 641. The court apparently believed that the Sosa family's lack of financial trouble and the recent renovation to their home undercut the state's theory that the defendant *101 sought to defraud the insurance company. The court likened the instant case to State v. Leger, 00-0920 (La.App. 3d Cir.12/20/00), 775 So.2d 1169, writ denied, 01-0240 (La.3/15/02), 811 So.2d 894, a case in which the Third Circuit had found the evidence insufficient to prove the defendant had possessed the necessary intent to defraud as required by La.Rev.Stat. 14:53.
In Leger, the appellate court pointed out that, although the defendant had been delinquent in her loan payments on numerous occasions, her payments were current at the time of the fire. Thus, evidence of the intent to defraud element was unpersuasive, according to the court. However, in Leger, the appellate court ultimately rested its reversal primarily on the state's inability to exclude the possibility that someone other than the defendant had set fire to her trailer given the recent history of vandalism in the area. State v. Leger, 00-0920, p. 5, 775 So.2d at 1172. Accordingly, the Leger court's reasoning is not necessarily apposite to the facts of the instant case.
Contrary to the appellate court's analysis, the jury rationally inferred the defendant's intent to defraud from his actions. First, he misled the officers by denying that he reentered his house before the fire started. Although his wife attributed his misstatement to confusion over the phrase "pass by," which she testified means "stop and go inside" in his native Puerto Rican culture, Officer Guidry's testimony made clear that the defendant stated he did not stop. In addition, a car similar in color and style to Ms. Sosa's was seen on the videotape driving by the house several minutes before the fire was visible. While the Fifth Circuit ultimately focused on the defendant's claimed lack of motive, specific intent does not require that a motive or plan be shown but only that the offender actively desired the proscribed criminal consequences to follow from his actions. La.Rev.Stat. 14:10(1). Following the fire, the defendant and his wife filed an insurance claim and received $90,000 to repair their home. Although the defendant's wife testified the house had been recently renovated, Officer Guidry testified that the remodeling occurred after the defendant had received insurance proceeds resulting from his claim of flood damage five years earlier in 1995. According to the officer, the renovation of the kitchen appeared to be incomplete, as evidenced by the condition of the kitchen counters. Thus, a jury could reasonably infer that the receipt of $90,000 from Allstate Insurance Company allowed the defendant, at the expense of his insurer, to repair and upgrade his house to his advantage, or "for his betterment," as the lower court phrased it. That the defendant's wife claimed they had additional out-of-pocket expenses as a result of the fire does not negate the fact that the defendant initially collected a large sum of money on the basis of a fire in his home that he had intentionally set. In the instant case, the defendant, who was already under ATF surveillance, was the only one who stood to benefit financially from a fire set in his home, and no one else was linked to the arson or shown to have an interest in harming him.
The trier-of-fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witness; thus, a reviewing court may impinge on the fact-finder's discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Mussall, 523 So.2d 1305, 1310 (La. 1988). The jury evidently made credibility determinations in this case[1] and *102 rationally deduced from the testimony of the state's experts that the defendant purposely set the fire and inferred from the defendant's actions that he had done so with the intent to defraud. Against this backdrop, we conclude the appellate court erred when it substituted its view of the evidence for that of the jury's and found that the state failed to prove that the defendant had possessed the intent to defraud his insurer.

CONCLUSION
For these reasons, we reverse the decision of the court of appeal and remand the case to that court for consideration of the assignments of error pretermitted below.
REVERSED AND REMANDED.
JOHNSON, J., dissents and assigns reasons.
JOHNSON, J., Dissents and assigns reasons.
I would affirm the Fifth Circuit Court of Appeal's decision reversing defendant's conviction and sentence for arson with intent to defraud, R.S. 14:53, because I believe the evidence was insufficient to support a conviction.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier-of-fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676, 678 (La.1984). Additionally, when circumstantial evidence forms the basis of the conviction, the evidence, "assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence." R.S. 15:438 (emphasis added); see State v. Jacobs, 504 So.2d 817, 820 (La.1987)(all direct and circumstantial evidence must meet the Jackson test); State v. Porretto, 468 So.2d 1142, 1146 (La.1985) (R.S. 15:438 serves as an evidentiary guide for the jury when considering circumstantial evidence).
The State's two experts, Dennis Guidry, the parish fire investigator with minimum training in fire investigation, and Bureau of Alcohol, Tobacco, and Firearms and Explosives ("ATF") Agent John Springer, both concluded that the fire began in the kitchen area and was purposely set by use of an accelerant. The State's third expert, Robert Alonzo, an electrical engineer, was brought in to inspect the electrical wiring and testify that the electrical wiring was not a contributing factor to the fire.
On the other hand, defense expert, LaDon Richardson, a former ATF officer and an expert in the field of cause and origin of fires, testified that he did not believe there was evidence that the fire was intentionally set and stated that the evidence was inconsistent with an accelerated fire. He believed the fire started in the attic, although he could not determine what caused the fire. According to Richardson, a fire investigation must start with the assumption that the area of greatest damage is where the fire burned longest. In this case, the fire started in the attic.
Richardson debunked the State theory that an accelerant was used in the kitchen. According to Richardson, if an accelerant was used, a "flashover" condition would be expected and the fire would become severe within minutes. Also, there was absolutely no physical evidence to support this theory. According to Richardson, the *103 common accelerants, i.e., gasoline, kerosene, diesel fuel, would not dissipate and would be evident for days after the fire.
The evidence presented by the State in this case would not meet the lesser burden of proof required in a civil trial. It certainly does not meet the burden of proof beyond a reasonable doubt.
NOTES
[*] Retired Judge Phillip C. Ciaccio, assigned as Justice Pro Tempore, sitting for Associate Justice Catherine D. Kimball.
[1] The trial judge, prior to sentencing the defendant, noted that the defendant's family members had not been truthful in their testimony.