STATE OF LOUISIANA

VERSUS

DAVID COSTANZA

NO. 19-KA-263

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 14-6642, DIVISION "C"
HONORABLE JUNE B. DARENSBURG, JUDGE PRESIDING

December 26, 2019

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Robert A. Chaisson,
Hans J. Liljeberg, and John J. Molaison, Jr.

**CONVICTION AFFIRMED; SENTENCE VACATED;**
**REMANDED FOR RESENTENCING**
    **HJL**
    **RAC**
    **JJM**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
Paul D. Connick, Jr.
Thomas J. Butler
Joshua K. Vanderhooft

COUNSEL FOR DEFENDANT/APPELLANT,
DAVID COSTANZA
Bruce G. Whittaker

**LILJEBERG, J.**

Defendant appeals his conviction and sentence for arson with intent to defraud. For the following reasons, we affirm defendant's conviction, vacate his sentence, and remand for resentencing.

## FACTS AND PROCEDURAL HISTORY

Defendant, David Costanza, was charged by bill of information with arson with intent to defraud in violation of La. R.S. 14:53. He pleaded not guilty at arraignment. On June 12-14, 2018, a bench trial was held.

At trial, Officer Arnold Breaux of the Westwego Police Department testified that on August 27, 2014, he responded to a call regarding a house fire at 801 Avenue A in Westwego. When he arrived, he observed black smoke coming from the house. Officer Breaux went next door to get residents out of their house.[1] He also observed an unrestrained dog running around in the back yard at 801 Avenue A and noted that someone grabbed the dog and took it away from the scene. Once the inside of the residence at 801 Avenue A was secured, he took photographs. Officer Breaux testified that a gas can was recovered outside the rear door and there was a key inside the lock of the front door. He also testified that he assisted in collecting samples from the crime scene, including debris that was scraped off of the floor inside the house and a piece of the box spring located in the rear bedroom. The samples were placed into four separate arson "cans."

Detective Christopher Fisher of the Westwego Police Department testified that he became involved in a potential arson investigation involving the house fire at 801 Avenue A. Initially, he was told that the fire appeared to be "suspicious." When Detective Fisher arrived, the scene had been secured, and the residence appeared to have significant fire damage on the outside. He recovered and

---

[1] Detective Christopher Fisher later testified that an elderly woman lived next door to 801 Avenue A and was present while the fire was "raging."

19-KA-263                                1

reviewed a surveillance video from the house across the street. He indicated that three individuals lived at 801 Avenue A and that defendant was one of them.

Detective Fisher testified that the surveillance video showed that Charles Walden, defendant's "father-in-law," went to the house with defendant that morning. The video reflected that Mr. Walden arrived at 8:57:24 and he and defendant walked toward the rear of the residence. At 9:00:48, they appeared to enter the back of the residence. Detective Fisher observed that at 9:02, Mr. Walden left the residence and at 9:06:09, defendant left the residence from the front door. He stated that at 9:06:58, he first noticed on the video that smoke was coming out of the right or south side of the house. Detective Fisher also saw smoke coming from the north side of the house. He testified that at 9:08:26, a man later identified as Clayton Prestwood approached the front door and that at 9:08:32, Mr. Prestwood walked away. At 9:09:06, there appeared to be a lot of smoke. [2] Defendant's key to the residence was in the front door when the fire investigators arrived. Detective Fisher testified that he obtained documents from Allstate Insurance Company regarding an insurance claim filed by defendant. His investigation led him to arrest defendant and charge him with arson with intent to defraud.

Kim Melancon testified that she was employed as a Jefferson Parish fire inspector and as a Westwego volunteer fire investigator. She further testified that on August 27, 2014, she learned there was a structure fire at 801 Avenue A. Ms. Melancon called James Boheman, the Director of Fire Investigations, to offer her assistance. Ms. Melancon became the lead fire investigator, and Mr. Boheman supervised and assisted her. She testified that she went to the scene and noticed that the most damaged part of the house was the master bedroom, which was

---

[2] The DVD containing the surveillance video was admitted into evidence and is consistent with Detective Fisher's testimony.

toward the east and on the south side of the building. Ms. Melancon asserted that it was "suspicious" that there was more damage to the master bedroom than anywhere else. She indicated there was a light sitting on a gas-powered generator at the scene, but she never saw it knocked over. She stated that they took samples of the box spring from the master bedroom, which were sent to the crime lab. Ms. Melancon determined that the origin of the fire was at the foot of the bed. She drew that conclusion because of the burn patterns and the way the springs were indented.

James Boheman testified that he was employed as the Director of Fire Investigations for the City of Westwego and as a fire prevention officer with the Marrero Volunteer Fire Department. He stated that on August 27, 2014, he became involved in the fire investigation at 801 Avenue A. Mr. Boheman determined that most of the fire damage occurred in a rear bedroom in the area of the mattress and box spring close to the northwest side of the room. He recalled seeing a generator with a lamp attached to it in the doorway but denied bringing it in. Mr. Boheman recalled that the generator was in the rear bedroom before the samples were taken. He stated that he took the generator from the dresser and put it on the floor, but he did not see the generator tip over or lie on its side.

Mr. Boheman testified that they did not trace the electrical circuits to determine why some circuit breakers had tripped. He further testified that they did not test any electrical appliances or a phone charger found at the scene to determine if they caused the fire. Mr. Boheman stated that the determination that the fire was incendiary was based solely on fire pattern analysis. He asserted that when he visually inspected the wires in the room, he did not see any indication that there was an electrical failure that would have caused the fire. Mr. Boheman testified that he believed the fire was intentionally set because the fire had "gone

rapidly," and they did not note anything electrical or any other potential causes other than human involvement.

Thomas Angelica, Jr. testified that he was employed as the Director of the Jefferson Parish Sheriff's Office Crime Lab. The State and the defense stipulated that he was an expert in the analysis and identification of ignitable liquids. Mr. Angelica testified that he examined four specimens that were collected from the crime scene at 801 Avenue A. He stated that he did not detect an odor in specimens one through three, but he did detect a chemical smell in specimen four. After testing the samples, Mr. Angelica concluded that gasoline was present in specimen four. He asserted that before he tested specimen four, he was not told that a gas generator had been at the scene where the sample was taken. If he had known there was a possible gasoline leak at the scene, he might have put a disclaimer in his report.

Robert Schaal testified that he was a private fire investigator who did consulting work regarding fire origin and cause determinations, actual scene investigations, and post-scene analysis. The State and the defense stipulated that he was an expert in the field of fire origin and cause. Mr. Schaal testified that he reviewed all of the previous work done in the investigation, including copies of photographs and reports. He also visited the scene twice. Mr. Schaal concluded that the fire originated in the rear bedroom at the northwest corner of the bed and that it was caused by the open-flamed ignition of gasoline. He based his conclusion on evidence and fire patterns he saw at the scene along with confirmation of the presence of gasoline in the lab sample taken from the box spring that would have been against the wall and "protected." Mr. Schaal testified that he had reviewed articles regarding the transfer of gasoline which showed that when individuals stepped in gasoline and walked, the test samples detected no gasoline.

Jeffrey Stark testified that he was a forensic engineer and a mechanical engineer. The State and the defense stipulated that he was an expert in the field of oil and gas equipment design. Mr. Stark testified that he was asked to review the report of defendant's expert, James Mazerat, to examine and test the subject generator to determine if there was any malfunction or defect, to note the generator's operational characteristics, and to ascertain how the generator could possibly leak gasoline. Mr. Stark stated that he tested the actual generator used in the fire investigation and did not observe any malfunction or defect in the generator that would cause it to leak gasoline during normal, or even aggressive, handling of it. He asserted that Mr. Mazerat said there was a recall on the generator in question. However, Mr. Stark stated there was a recall on the Honda EU2000, a different unit, and there was no recall issued on the Honda EU1000, the generator in question. Mr. Stark explained that the fuel would have to travel a winding route to get out of the generator. He also explained that the generator leaks at approximately sixty degrees when it is angled forward and that it is naturally carried at thirty degrees.

After the State rested, the defense called Jessica Walden as a witness. Ms. Walden testified that defendant was her fiancé and she had known him for approximately seventeen years. She explained that she, her son, and defendant lived at 801 Avenue A before the fire. She maintained that she was working at the time of the incident. Ms. Walden asserted that she had observed defendant being forgetful, such as forgetting his keys in a car door or walking out of the house without his insulin. She stated that she had lived at the house for twelve years, and they had done a lot of renovations to the house during that time. Ms. Walden stated that she lost most of her belongings in the house fire.

James Mazerat testified for the defense that he had been investigating cause and fire origins for forty-three years. The State and the defense stipulated that Mr.

Mazerat was an expert in the field of fire cause and origin. He testified that he investigated the fire in the instant case and concluded that the fire originated from an unknown electrical source in the attic above the rear bedroom or around the area of the rear bedroom. Mr. Mazerat thought the origin of the fire started in the attic in or near where boxes had been placed above the bedroom. Mr. Mazerat believed that the fire was already going in a "smoldering stage" and broke out in the attic while defendant and his father-in-law were still in the house. He said there was no way to tell exactly when the fire started. It was his belief that there was a transfer of gasoline that contaminated the scene.

Mr. Schaal testified in rebuttal for the State that it was his opinion that Mr. Mazerat's conclusion was incorrect. He asserted there was no indication that the fire traveled through the attic and vented into the bedroom. He also stated that there was a lack of charring, a lack of soot, and a lack of real fire damage in the attic.

The State and the defense stipulated that defendant filed an insurance claim in connection with the instant case. Defense counsel agreed to the stipulation as long as the content of that claim was not testified to in any manner.

At the conclusion of trial, the trial court found defendant guilty as charged. On January 18, 2019, the trial court sentenced defendant to one year of hard labor to be served via home incarceration.[3] Defendant appeals.

## LAW AND DISCUSSION

On appeal, defendant argues that the evidence was insufficient to support the verdict. He contends that the State did not exclude every reasonable hypothesis of innocence, including the possibility that the fire was not caused by human intervention. He specifically contends that the State failed to exclude an electrical fault in the wiring, an appliance, or a phone charger as a possible cause of the fire.

---

[3] See Errors Patent discussion, *infra*.

Defendant asserts that the State also failed to exclude the reasonable probability that the gas-powered generator at the scene was the source of the accelerant that was key to the State's theory of guilt. He argues that without having excluded those possible sources of ignition, or the alternative source of the accelerant, the circumstantial evidence of guilt was legally insufficient to support the verdict.

Defendant also argues that the State failed to prove beyond a reasonable doubt that the alleged arson was done with the specific intent to defraud. He claims there is no evidence in the record upon which to conclude that he possessed the requisite specific intent to defraud his insurer. Defendant notes that there was no evidence that he had any financial troubles and there was unchallenged testimony from his fiancé that the home had been extensively renovated over the years and was their family home. He asserts that although the parties stipulated to the fact that he made an insurance claim for fire damage, there is no evidence in the record to show the amount of the claim or that the claim was inflated or otherwise fraudulent. Thus, defendant contends that even assuming that the evidence supports a finding that the fire was intentionally set, the State failed to prove the second element of the crime—intent to defraud. As such, he argues that this Court must set aside his conviction and sentence.

The State responds that the testimony of several of its witnesses supported the conclusion that the fire was started by human intervention, not mechanical failure. As to the specific intent to defraud, the State contends that the evidence at trial established that the fire was intentionally started with the use of gasoline and that defendant subsequently filed an insurance claim with Allstate Insurance Company. It argues that defendant benefitted financially from the fire set in his home and that no one else was linked to the arson of his residence.

In reviewing the sufficiency of evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in

the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-0674 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

In cases involving circumstantial evidence, the trial court must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Mitchell*, 99-3342 (La. 10/17/00), 772 So.2d 78, 83; *State v. Washington*, 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

Arson with intent to defraud is defined as "the setting fire to, or damaging by any explosive substance, any property, with intent to defraud." La. R.S. 14:53. The intent to defraud element requires specific intent. *State v. Porter*, 454 So.2d 220, 225 (La. App. 3 Cir. 1984), *writ denied*, 457 So.2d 17 (La. 1984), *cert. denied*, 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985). Specific intent is defined in La. R.S. 14:10(1) as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. *State v. Woodhead*, 03-1036 (La. App. 5 Cir. 1/27/04), 866 So.2d 995, 999, *writ denied*, 04-0598 (La. 7/2/04), 877 So.2d 144.

In *State v. Sosa*, 05-0213 (La. 1/19/06), 921 So.2d 94, the defendant was convicted of arson with intent to defraud. On appeal, this Court reversed his conviction and sentence, finding the evidence was insufficient to prove he had the specific intent to defraud when he set the fire. The Louisiana Supreme Court reversed and remanded, finding that the jury made credibility determinations and rationally deduced from the testimony of the State's experts that the defendant purposefully set the fire and rationally inferred from the defendant's actions that he had done so with the intent to defraud. *Id.* at 101-102. In that case, the State's experts testified that the fire was intentionally set; however, the defense expert testified that the fire was not intentionally set and that the evidence was inconsistent with an accelerated fire. The Court found that although the opinions of the experts clearly conflicted, there was nothing in the record that suggested the jury acted irrationally in making credibility decisions, weighing the evidence, and accepting the opinion testimony of the State's experts over that of the defendant's expert. *Id.* at 100.

Also, the Court in *Sosa* noted that while this Court focused on the defendant's claimed lack of motive, specific intent did not require that a motive or a plan be shown but only that the offender actively desired the proscribed criminal consequences to follow from his actions pursuant to La. R.S. 14:10(1). *Sosa*, 921 So.2d at 101. The Court asserted that following the fire, the defendant and his wife filed an insurance claim and received $90,000 to repair their home. It indicated that the defendant was the only one who stood to benefit financially from a fire set in his home and that no one else was linked to the arson or shown to have an interest in harming him. *Id.*

In the instant case, the State presented sufficient evidence to show defendant intentionally set the fire. Detective Fisher testified that the video reflected Mr. Walden left the residence at 9:02 and defendant left at 9:06:09. A few seconds

later at 9:06:58, Detective Fisher saw on the video that smoke was coming out of the house. Ms. Melancon, a Jefferson Parish fire inspector, testified that the most damaged part of the house was the master bedroom and that the origin of the fire was at the foot of the bed. Mr. Boheman, the Director of Fire Investigations for Westwego, testified that he believed the fire was intentionally set because the fire had "gone rapidly," and they did not note any other potential causes. Mr. Angelica, the Director of the Jefferson Parish Crime Lab, testified that gasoline was found in the sample taken from the box spring in the rear bedroom. Mr. Schaal, the State's expert in fire origin and cause, concluded that the fire originated in the rear bedroom and was caused by the open-flamed ignition of gasoline. Mr. Stark, the State's expert in oil and gas equipment design, testified there was no malfunction or defect in the generator that would have caused it to leak gasoline.

On the other hand, Mr. Mazerat, the defense expert in fire cause and origin, concluded that the fire originated from an unknown electrical source in the attic. He also testified that he believed there was a transfer of gasoline from the generator that contaminated the scene. However, Mr. Schaal testified in rebuttal that he believed Mr. Mazerat's conclusion was incorrect, noting the lack of charring, the lack of soot, and the lack of real fire damage in the attic. He also testified that burn patterns clearly showed the fire originated in the residential portion of the structure and progressed up toward the attic.

The State also presented sufficient evidence to show defendant intentionally set the fire with the specific intent to defraud. The State and the defense stipulated that defendant filed an insurance claim with Allstate Insurance Company in connection with the instant case. Defense counsel agreed to the stipulation as long as the content of that claim was not testified to in any manner. Although there was no testimony that defendant was having financial problems, the Louisiana Supreme Court in *Sosa* noted that specific intent did not require that a motive or a plan be

shown but only that the offender actively desired the proscribed criminal consequences to follow from his actions pursuant to La. R.S. 14:10(1). *Sosa*, 921 So.2d at 101. Similar to *Sosa*, the evidence in the instant case indicates that defendant stood to benefit financially from a fire set in his home.

The trial judge listened to the witnesses and evaluated the evidence. She clearly found the State's witnesses to be more credible than the defense witnesses. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. *State v. Rowan*, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to find that defendant intentionally set fire to his home with the specific intent to defraud his insurance company. Accordingly, defendant's arguments on appeal are without merit, and we affirm his conviction.

## ERRORS PATENT

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990). As a result of the following sentencing errors, we vacate defendant's sentence and remand for resentencing.

Pursuant to La. C.Cr.P. art. 879, the trial court is required to impose a determinate sentence. In this case, the transcript reflects that the trial judge sentenced defendant to one year of hard labor to be "served by way of home incarceration." She ordered defendant to follow all of the home-incarceration rules and said, "they will explain those to you when you go over to home incarceration when you leave here today." The trial court did not orally impose conditions of home incarceration. Although the "Conditions of Jefferson Parish Home

Incarceration" form signed by the defendant, his attorney, and the trial judge shows a table listing some conditions, the rest of the form is blank regarding scheduled times, location, and specific comments. Also, the form entitled, "Felony: Schedule of Fines, Fees, Sentencing Provisions & Probation Requirement" states that defendant shall comply with the following special conditions of home incarceration, but each of the paragraphs that lists special conditions has been scratched through.

In *State v. Walker*, 08-563 (La. App. 5 Cir. 1/13/09), 8 So.3d 17, 18-19, the defendant pleaded guilty to third-offense possession of marijuana and was sentenced to two years at hard labor to be served in home incarceration with "ATI." In an error patent review, this Court found that the sentence imposed by the trial court was indeterminate under La. C.Cr.P. art. 879. This Court stated in pertinent part:

> La. C.Cr.P. art. 894.2 provides that the trial court may order home incarceration *in lieu of* imprisonment—not *as* imprisonment. Therefore, a hard labor sentence and an order of home incarceration are incongruent. In order to sentence a defendant to home incarceration, first the sentencing court must suspend the imprisonment and order the suspension to be served in home incarceration with supervision. (Emphasis in original)

*Walker*, 8 So.3d at 21.

In *Walker*, this Court also noted that the trial court did not orally impose conditions of home incarceration. This Court vacated the sentence and remanded for resentencing. *Id.* at 22.

La. C.Cr.P. art. 894.2 provides in pertinent part:

> C. The court shall specify the conditions of home incarceration. The conditions may include any condition reasonably related to implementing or monitoring the home incarceration, including curfew, electronic or telephone monitoring, home visitation by persons designated by the court, and limitation of the defendant's activities outside of the home.

D. The defendant shall be given a certificate setting forth the conditions of his home incarceration and shall be required to agree in writing to the conditions.

In *State v. Frickey*, 00-294 (La. App. 5 Cir. 9/26/00), 769 So.2d 791, 799, in an error patent review, this Court found that the trial court failed to properly comply with the requirements for imposition of home incarceration. In addition to other sentencing errors, this Court found that the trial court failed to specify the conditions of home incarceration as required by La. C.Cr.P. art. 894.2(C). This Court further found that because the defendant was not apprised of the required conditions, pursuant to La. C.Cr.P. art. 894.2, the sentence may be considered indeterminate under La. C.Cr.P. art. 879. Accordingly, this Court vacated the sentence and remanded for resentencing in compliance with La. C.Cr.P. art. 894.2. *Id.* at 800.

In the instant case, we find the trial court erred by ordering the one-year hard labor sentence to be served in home incarceration in light of *Walker*, where this Court found that Article 894.2 provided that the trial court may order home incarceration in lieu of imprisonment—not as imprisonment. We also find that the trial court erred by failing to specify the conditions of home incarceration. *See Frickey, supra.* Although defendant agreed to abide by home incarceration rules, defendant was not apprised of the rules applicable to him. Based on the foregoing, we vacate defendant's sentence and remand for resentencing.

**DECREE**

For the foregoing reasons, we affirm defendant's conviction, vacate his sentence, and remand to the trial court for resentencing.

**CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**DECEMBER 26, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 19-KA-263

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE JUNE B. DARENSBURG (DISTRICT JUDGE)
TERRY M. BOUDREAUX (APPELLEE)          THOMAS J. BUTLER (APPELLEE)

### MAILED

BRUCE G. WHITTAKER (APPELLANT)          HON. PAUL D. CONNICK, JR. (APPELLEE)
ATTORNEY AT LAW                         JOSHUA K. VANDERHOOFT (APPELLEE)
LOUISIANA APPELLATE PROJECT             ASSISTANT DISTRICT ATTORNEYS
1215 PRYTANIA STREET                    TWENTY-FOURTH JUDICIAL DISTRICT
SUITE 332                               200 DERBIGNY STREET
NEW ORLEANS, LA 70130                   GRETNA, LA 70053