MARC E. JOHNSON, Judge.
|2Pefendant, Donald Morton, appeals his conviction of possession with intent to distribute cocaine from the 24th Judicial District Court, Division “P”. For the following reasons, we affirm the conviction, amend the sentence, and remand the matter to the trial court with instructions.

*1036
STATEMENT OF THE CASE

On April 5, 2011, the Jefferson Parish District Attorney filed a bill of information charging Defendant, Donald Morton, with knowingly and intentionally possessing cocaine in excess of 28 to 200 grams, in violation of LSA-R.S. 40:967 F. On April 6, 2011, Defendant was arraigned and pleaded not guilty. Subsequent to pleading not guilty, Defendant filed several pretrial motions, including a motion to suppress evidence and statement, which were denied on July 27, 2011. On August 8, 2011, the Jefferson Parish District Attorney amended the charged offense to possession with intent to distribute cocaine, in violation of LSA-R.S. 40:967 A.
| ^Defendant waived his right to a jury, and on August 23, 2011, the trial court found Defendant guilty as charged. On September 28, 2011, the trial court denied Defendant’s motion in arrest of judgment, or in the alternative, motion for new trial. On the same date, the court sentenced Defendant to imprisonment at hard labor for a term of 15 years, to be served without the benefit of parole, probation or suspension of sentence, with credit for time served, and to run concurrently with Defendant’s sentence in case number 11-1619.[1] On October 5, 2011, Defendant filed a motion for reconsideration of sentence.[2] On October 6, 2011, the trial court granted Defendant’s motion for appeal. Defendant now timely appeals his conviction.

FACTS

Detective Brad Roniger, of the Jefferson Parish Sheriffs Office, Narcotics Division, testified that on February 18, 2011, he received information from an individual named Miranda Hickman concerning a drug deal. The information obtained prompted the surveillance of Mike’s Discount Convenience Store (“Mike’s Discount”) at 6611 Westbank Expressway in Marrero.[3] Participating in the surveillance of Mike’s Discount with Detective Roniger were Sergeant Klein, Detective Clogher, Detective Voohries and Detective Bermudes.[4] Three unmarked police units were utilized to conduct the surveillance. Detective Roniger testified that the surveillance was intended to corroborate information that a black male Lsubject driving a dark-colored vehicle with distinctive stripes would meet Hickman at Mike’s Discount to sell her narcotics.[5]
Once the vehicle described by Hickman was observed by the officers and Hickman had entered the passenger side of the vehicle, the officers positioned one of their unmarked units in front, and one in back, of Defendant’s vehicle. Detective Roniger testified that when Defendant observed Detective Clogher exiting one of the units, *1037 Defendant drove his vehicle forward and backward striking both unmarked units. Defendant was subsequently removed from his vehicle, advised of his Miranda [6] rights, and placed under arrest.
After placing Defendant under arrest, Detective Roniger testified that he spoke to Hickman who advised him that she did not have any narcotics on her person. Detective Roniger also testified that he did not personally perform a search of Defendant’s vehicle; however, he was aware that a small quantity of crack cocaine was recovered from inside the vehicle. The officers then relocated to Defendant’s residence where a search warrant had been authorized. Upon conducting a search of the rear shed, which had been converted into a residence, Detective Roniger testified that a crack pipe, a digital scale, and a clear plastic bag containing cocaine were seized by the officers. Detective Roniger further testified that at the time of Defendant’s arrest, approximately $600 in cash was found on Defendant’s person. Defendant stated that he had a legitimate means of income; however, he failed to specify the source of his earnings.
Detective Ronnie Voohries, of the Jefferson Parish Sheriffs Office, Narcotics Division, also testified that he participated in the surveillance conducted at Mike’s Discount on February 18, 2011. Detective Voohries testified | ¿substantially similar to Detective Roniger regarding the surveillance, drug transaction, and arrest of Defendant, in which the surveillance was commenced to corroborate the information gained from Hickman. Detective Vooh-ries testified that subsequent to Defendant’s arrest, he conducted a search of Defendant’s vehicle and found a rock-like object inside a plastic bag in the front seat of the vehicle near the area of the arm rest. The officers then relocated to Defendant’s residence at 1208 Marshall. When they arrived at the house, Detective Voohries testified that a woman by the name of Clarisa Ellie and her child were present. Detective Voohries learned from Ellie that Defendant did not live in the main residence. Detective Voohries confirmed this information upon conducting a protective sweep of the interior of the main residence where he did not observe any male clothing or other items indicating Defendant’s presence. Ellie also advised Detective Voohries that she was renting the main residence from Defendant, and Defendant resided in the back residence. After speaking to Ellie, a search warrant was obtained for the back residence.
Detective Shane Klein, of the Jefferson Parish Sheriffs Office, Narcotics Division, testified that he placed Defendant under arrest at Mike’s Discount on February 18, 2011. Detective Klein testified regarding the facts leading up to Defendant’s arrest, which corroborated the testimonies of Detectives Roniger and Voohries. Namely, Detective Klein testified that after observing Hickman enter Defendant’s black Chevrolet Lumina with a silver stripe, he began to approach Defendant’s vehicle on foot when Defendant proceeded to drive his car into the two police vehicles that were blocking him in. Defendant was then placed under arrest by Detective Klein for striking a police vehicle and was read his Miranda rights. Detective Klein testified that Defendant acknowledged that he understood his rights. Once the crack cocaine was recovered from Defendant’s vehicle, | (¡Detective Klein asked him about the contraband, to which Defendant “just nodded his shoulders and said, ‘you know, what can I say?”’ Detective Klein also asked Defendant whether he had any nar *1038 cotics at his home. Defendant informed Detective Klein that he had a crack pipe at his home and further provided his verbal consent to search his residence located at 1208 Marshall. On the way to his house, Defendant led the officers to believe that he was living inside the main residence at 1208 Marshall, and that upon their arrival, there would be a woman and child present.
Upon arrival at the residence, the officers attempted to use Defendant’s keys to enter the front door, however, they did not fit. A female eventually opened the door and once inside the house, Detective Klein learned Defendant actually lived in the back residence. Detective Klein advised Defendant that he was going to include the back residence in the Consent to Search Form but Defendant immediately withdrew his consent. Thus, Detective Klein obtained a search warrant for the front and back residences.[7]
Upon executing the search warrant, Detective Klein testified that Defendant’s keys opened the back residence. Once inside the back residence, the officers recovered a large bag of white powdery substance, a glass pipe, digital scales, miscel-Ianeous paperwork,[8] an off-white rock, a drinking glass,[9] and plastic bags.[10] Detective Klein testified that the paperwork contained Defendant’s name, 17and that Defendant’s driver’s license bore the address “1208 Marshall Drive.” An envelope with Defendant’s name on it and a list of eight different names with a monetary amount next to each name was also seized from the back residence. Detective Klein further testified that at the time of Defendant’s arrest, he seized $633.00 from Defendant’s person, and that Defendant could not provide an answer as to how he obtained the money.
The trial court also qualified Detective Klein as an expert in the packaging, quantifying and evaluation of illicit narcotics. Based on Detective Klein’s experience as a narcotics agent, he testified that the list of names found on the back of the envelope in Defendant’s residence appeared to be a tally sheet of the people that owed Defendant money. Detective Klein also testified that the quantity of cocaine found in Defendant’s residence alone was consistent with an individual who was engaging in the illegal sale and distribution of narcotics.[11]
*1039 Miranda Hickman testified that on February 18, 2011, she was staying at a hotel in Marrero with her boyfriend when the police arrived at her door. Hickman further testified that she allowed the officers to search her room, at which time they found paraphernalia and told her that “they was going to put something on [her],” so she told the officers that she was going to “meet somebody.”[12] Hickman testified that she set up the drug buy with Defendant so that the police would “leave her alone.”[13] According to Hickman, she then walked over to Mike’s Discount and unbeknownst to her, the officers followed. Hickman also testified that she met up with Defendant and got into his vehicle with the purpose of “messing around,” not to buy crack cocaine. Hickman further testified that the | scrack cocaine found inside the vehicle was not hers, and she did not bring or place the narcotics in Defendant’s vehicle.[14] Finally, Hickman testified that the police never offered her any money to set up Defendant.
Detective Donald Clogher, of the Jefferson Parish Sheriffs Office, testified that while on a proactive narcotics patrol, he, along with Detectives Roniger and Vooh-ries, followed a male subject to a hotel room where they encountered Hickman. Detective Clogher testified that they did not perform a search of the hotel room and did not locate any drugs or paraphernalia. Detective Clogher also testified that he did not threaten Hickman with charges if she did not assist them. Detective Clogher testified that Hickman informed him that “she could make a phone call and set up a transaction, narcotics transaction with an individual.” According to Detective Clo-gher, Hickman made the phone call in front of the officers and arranged for the drug buy to take place at Mike’s Discount.[15] Detective Clogher then testified consistently with the other detectives regarding the surveillance and arrest of Defendant. Detective Clogher also testified that after Defendant was placed under arrest, he and Sergeant Klein relocated to Defendant’s residence where he participated in the search of the back residence. Detective Clogher further confirmed the testimony of the contraband seized from the back residence.
Lastly, Defendant testified. Defendant testified that he went to Mike’s Discount on February 18, 2011, to get a sandwich. Defendant indicated that when he pulled into the Mike’s Discount parking lot, he noticed Hickman standing in front of the store. Defendant testified he was looking for a place to park when ajaman, who did not identify himself as a police officer, ran up to his window with a gun and ordered him to get out of the car. Defendant stated that he attempted to put the car in *1040 park but accidentally put it in reverse and “touched the car that was behind” him.[16] Defendant further testified that he had never spoken to Hickman before, that she did not get into his car on the night in question, and that he did not know Hickman but recognized her in the parking lot of Mike’s Discount because he had seen her around the area before. Defendant testified that he was pulled out of the car and placed in handcuffs while the officers searched his person and vehicle. Defendant stated he told the officer that he was on parole and the money in his wallet was from his job as a driver for a limousine service.[17] Defendant denied having any narcotics in the vehicle he was driving and further testified that one of the officers stated at the scene that his car was “clean.” Defendant testified that he was not Mirandized, and that he did not give the officers consent to search his house.
When they arrived at his house, Defendant testified that the officers threatened to kick down the front door when his keys did not fit. After gaining entry into the house by a woman named Clarisa, Defendant testified that the officers brought him into the rear of the house, ordered him to take off all of his clothes, and then told him to sign a consent to search form. Defendant refused to sign the consent to search form and was brought back to the front of the house after an officer came into the room and told the other officers that the keys unlocked the back house. Defendant testified that he waited for the officers to obtain a search warrant, and when they came back with the warrant, which was never shown to him, they had already searched the house. Defendant denied any knowledge of the [10narcotics found in his back house and further denied ownership of the scales that were found, claiming that the back house had been leased out to three other people in the past. Defendant testified that at the time of the incident he was “mostly staying” at his sister-in-law’s house and was making repairs to the back house.
On cross-examination, Defendant admitted to being convicted in 2004 of possession with intent to distribute cocaine and two counts of possession of cocaine. Defendant was also convicted of possession of a handgun while in possession of cocaine in 2006. Defendant testified that pursuant to his parole requirements, he provided his parole officer with his address, which he listed as 1208 Marshall Drive. Defendant admitted that he leases the main residence, and that he lived in the small back residence, but other people had stayed there as well. Defendant also testified that he had stayed in the back residence the night before he was arrested, and that he woke up there that morning, but no contraband was present and no one else was with him in the back residence when he left that morning. Defendant admitted that only he and his stepdaughter have keys to the back residence. Defendant testified that he did not know how the contraband got into the back residence.

ASSIGNMENT OF ERROR

Defendant’s sole assignment of error is the evidence was insufficient to support this conviction beyond a reasonable doubt.

DISCUSSION

Defendant was charged, tried, and convicted of possession with the intent to distribute cocaine. Defendant now argues *1041 that the police officers set up the encounter between Hickman and him, after threatening Hickman to gain her cooperation. Defendant also asserts the police officers’ testimonies at trial were not credible, and they planted the evidence that led to his conviction. Additionally, 11TPefendant contends that the State failed to prove beyond a reasonable doubt that he possessed the requisite guilty knowledge, dominion and control over the contraband to support the conviction in this case.
In response, the State asserts that the evidence presented at trial was sufficient to support Defendant’s conviction. Specifically, the State contends that Defendant’s admissions alone prove beyond a reasonable doubt that the contraband was in his possession. The State also maintains that the trial court found the testimony of the four narcotics police officers to be more credible than that of Defendant, which should not be reweighed on appeal.
The constitutional standard for testing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).
An appellate court, in reviewing the sufficiency of evidence, must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier-of-fact that all of the elements of the crime have been proven beyond a reasonable doubt. State v. Sosa, 05-213 (La.1/19/06); 921 So.2d 94, 99. Additionally, when circumstantial evidence forms the basis of the conviction, the evidence, “assuming every fact to be proved that the evidence tends to prove ... must exclude every reasonable hypothesis of innocence.” Id. “When a jury rationally rejects the hypothesis of innocence advanced by the defendant, that hypothesis fails, and ‘the defendant is guilty unless there is another hypothesis which raises a reasonable doubt,’ i.e., an ‘alternative hypothesis ... sufficiently reasonable that a rational juror could not have found proof of guilt beyond a | ^reasonable doubt.’ ” Id., citing State v. Captville, 448 So.2d 676, 680 (La.1984). The trier of fact makes credibility determinations, and may, within the bounds of rationality, accept or reject the testimony of any witness, at its discretion. Sosa, 921 So.2d at 101. The appellate court may impinge on the fact-finder’s discretion only to the extent necessary to guarantee the fundamental due process of law. Id.
Absent internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Caffery, 08-717 (La.App. 5 Cir. 5/12/09); 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10); 27 So3d 297. The credibility of witnesses is not to be reweighed on appeal. State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97); 694 So.2d 1052,1056.
In the instant case, Defendant challenges the evidence relating to his conviction for possession with the intent to distribute cocaine in violation of LSA-R.S. 40:967 A. In order to support a conviction for possession of cocaine pursuant to LSA-R.S. 40:967, the State must prove beyond a reasonable doubt that the defendant was in possession of the cocaine and that he knowingly possessed it. State v. Walker, 03-188 (La.App. 5 Cir. 7/29/03); 853 So.2d 61, 65, writ denied, 03-2343 (La.2/6/04); 865 So.2d 738. The element of possession may be proven by showing that the defendant exercised either actual or constructive *1042 possession of the cocaine. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08); 985 So.2d 234, 241.
A person who is not in physical possession of narcotics may have constructive possession when the drugs are under his dominion and control. State v. Manson, 01-159 (La.App. 5 Cir. 6/27/01); 791 So.2d 749, 761, writ denied, 01-2269 (La.9/20/02); 825 So.2d 1156. A determination of whether there is “possession” sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion |isand control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs. State v. Toups, 01-1875 (La.10/15/02); 833 So.2d 910, 912.
 With regard to the intent to distribute cocaine, to sustain its burden, the State was required to show that defendant possessed the cocaine and he did so with the specific intent to distribute it. LSA-R.S. 40:967; State v. Suavely, 99-1223 (La. App. 5 Cir. 4/12/00); 759 So.2d 950, 958, writ denied, 00-1439 (La.2/16/01); 785 So.2d 840. Specific intent is “that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.” LSA-R.S. 14:10(1); State v. Mitchell, 99-3342 (La.10/17/00); 772 So.2d 78, 82; State v. Coleman, 02-345 (La.App. 5 Cir. 9/18/02); 829 So.2d 468, 471. Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. Further, specific intent is a legal conclusion to be resolved by the fact-finder. State v. Graham, 420 So.2d 1126, 1128 (La.1982); State v. Meyers, 95-750 (La.App. 5 Cir. 11/26/96); 683 So.2d 1378, 1383, writ denied, 97-0234 (La.6/20/97); 695 So.2d 1350.
The intent to distribute may be established by proving circumstances surrounding the defendant’s possession which gave rise to an inference of such intent. Such circumstances include (1) previous attempts to distribute; (2) whether the drugs are in a form consistent with distribution; (3) the amount of the drugs; (4) expert testimony indicating the amount of the drugs recovered is not consistent with personal use; and (5) paraphernalia evidencing an intent to distribute. State v. Hearold, 603 So.2d 731, 735 (La.1992).
114Here, Defendant’s sole challenge on appeal relates to whether the State proved the requisite guilty knowledge and dominion and control over the contraband to support the conviction in this case. Because Defendant has not challenged the State’s proof as to the second element of the charged offense, namely, his intent to distribute the cocaine, only the possession element is before this Court on review.
All four detectives testified at trial that the surveillance of Mike’s Discount was set up in this case based on information gained from Hickman that a drug sale was scheduled to take place there between Hickman and a black male subject driving a dark colored vehicle with distinctive stripes. Once the information was verified, and Hickman was observed entering Defendant’s vehicle to engage in what the officers believed to be a hand-to-hand drug transaction, they positioned their police vehicles around Defendant’s car. The testimony of all four police officers suggests that upon seeing the officers, Defendant attempted to flee and as a result, crashed his car into the police vehicles surrounding him. It was at this time that Defendant *1043 was placed under arrest and informed of his Miranda rights. Upon searching his car, a crack cocaine rock was recovered in plain view in the front seat of the vehicle, near the area of the arm rest. Additionally, over $600 in cash was found on Defendant’s person, and he could not provide an answer as to how he obtained the money. After questioning Defendant about the crack cocaine found in his car, Defendant “just nodded his shoulders and said, ‘y°u know, what can I say?’ ” Defendant was also asked whether he had any narcotics at his house.
After admitting that he had a crack pipe at his house, Defendant provided the officers with his verbal consent to search' his home, which he identified as 1208 Marshall Drive. Once at Defendant’s home, the officers discovered that his keys did not open the door to the main residence. The officers also learned that | ^Defendant was renting out the main residence and pursuant to his own admissions, the officers were advised that he actually lived in the small back house. When the officers indicated that they were going to add the back house to the consent to search form, Defendant immediately -withdrew his consent. Thus, a search warrant was obtained and executed. Defendant’s keys were used to open the back house and upon executing the search warrant, the officers recovered a large bag of white powdery substance, a glass pipe, digital scales, paperwork with Defendant’s name and address on it, an off-white rock, a drinking glass, a suspected ledger and plastic bags.
In addition to the four officers’ testimony, both Hickman and Defendant testified at trial. Hickman, although later contradicted by her own testimony, confirmed that she set up the drug buy with Defendant at Mike’s Discount. Also, Defendant’s own admissions further established Defendant’s possession of the contraband used to charge the Defendant in this case. Specifically, Defendant admitted that he resided in the back house where the contraband was found and had stayed there the night before his arrest. Moreover, Defendant testified that pursuant to his parole requirements, he provided his parole officer with his address which he listed as 1208 Marshall Drive. Defendant further admitted that only he and his stepdaughter have keys to the back residence, and that he did not know how the contraband ended up in his residence.
Taken as a whole, the evidence put on by the State at trial was sufficient to establish a connection to Defendant and the crack cocaine found in his car and the contraband recovered from the back residence located at 1208 Marshall Drive. Moreover, the facts as testified to by the officers in this case, as well as Defendant’s admissions and the evidence seized at the Marshall Drive residence, directly links Defendant to the home and strongly support the conclusion that | ^Defendant had constructive possession over the contraband used to charge and convict him in this case.[18] Also, evidence of Defendant’s *1044 guilty knowledge is inferred by Defendant’s attempt to escape the police at Mike’s Discount and the withdrawal of his consent to search after the officers indicated that the back residence was going to be added to the consent to search form.
The trial court apparently believed the testimony of the four police officers and rejected Defendant’s alternative hypothesis that Hickman was threatened, and that the police planted the contraband in his car and home as unreasonable. It is not the function of the appellate court to assess the credibility of witnesses or reweigh the evidence. State ex rel. Graffagnino v. King, 436 So.2d 559, 563 (La.1983); State v. Lewis, 98-672 (La.App. 5 Cir. 3/10/99); 732 So.2d 556, 560, writ denied, 99-2818 (La.4/20/00); 760 So.2d 334.
Therefore, given the evidence and testimony presented at trial, we find that the evidence is sufficient to support the element of possession. Based on our review of the record, we affirm Defendant’s conviction and find the State sufficiently proved beyond a reasonable doubt that Defendant was guilty of possession with the intent to distribute cocaine.
| ^ERRORS PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
First, there is nothing in the record to show that Defendant was arraigned on the amended charge set forth in the bill of information. On April 5, 2011, the State filed a bill of information charging Defendant with possession of cocaine in excess of 28 to 200 grams, in violation of LSA-R.S. 40:967 F. On April 6, 2011, defendant was arraigned and pleaded not guilty. On August 8, 2011, the State amended the charged offense to possession with intent to distribute cocaine, in violation of LSA-R.S. 40:967 A. Defendant proceeded to trial on the amended charge without objection, thereby waiving any irregularity. LSA-C.Cr.P. art. 555.[19] If a defendant fails to enter a plea, it is considered as if he had pleaded not guilty. Id.; State v. Parent, 02-835 (La.App. 5 Cir. 12/30/02); 836 So.2d 494, 508 n. 6, writ denied, 03-0491 (La.10/31/03), 857 So.2d 472; State v. Washington, 05-211 (La.App. 5 Cir. *1045 10/6/05); 916 So.2d 1171. Therefore, we find that no corrective action is necessary.
Second, the record indicates that the trial court failed to observe the 24-hour delay between denying Defendant’s Motion in Arrest of Judgment and Alternatively Motion for New Trial and sentencing, as required by LSA-C.Cr.P. art. 873. However, we find Defendant waived the sentencing delays required by LSA-C.Cr.P. art. 873.
|1sIn State v. Scott, 249 La. 20, 184 So.2d 542 (1966), the Louisiana Supreme Court held that an affirmative action indicating a waiver of the provisions of LSA-C.Cr.P. art. 873 was necessary. In State v. James, 527 So.2d 504, 505 (La.App. 5th Cir.1988), this Court held that the delays were waived when counsel affirmatively responded to the trial court that the defendant was ready for sentencing. Also, in State v. Green, 04-357 (La.App. 5 Cir. 11/16/04); 890 So.2d 6,12, this Court found a valid waiver of delays, even though defense counsel did not expressly state that the defendant was ready for sentencing, because he agreed with the trial court that the defendant needed to be sentenced.
The record in this case indicates that at the beginning of the sentencing hearing on September 28, 2011, defense counsel acknowledged that the matter was set for sentencing and informed the trial court of the outstanding motion to arrest judgment and motion for new trial. After both motions were denied, the trial court asked the defense attorney, “[a]re you ready for sentencing in this matter?” to which the defense attorney responded, “[y]es, your Honor.” Noting that Defendant was ready for sentencing, the court sentenced Defendant to 15 years imprisonment.
Accordingly, based on Defendant’s affirmative statement indicating that he was ready for sentencing, we find that Defendant waived the required sentencing delay.[20]
Third, although the commitment reflects Defendant was given a proper ad-visal of the time period for seeking post-conviction relief, the transcript indicates that the trial court failed to advise him of such time limitation, as provided in LSA-C.Cr.P. art. 930.8. The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983).
holt is well-settled that if a trial court fails to advise, or provides an incomplete advisal, pursuant to LSA-C.Cr.P. art. 930.8, the appellate court may correct said error by informing the defendant of the applicable prescriptive period for post-conviction relief by way of an opinion. See State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06); 928 So.2d 761, 767, 768, writ denied, 06-1566 (La.1/8/07); 948 So.2d 120; State v. Thomas, 10-220 (La.App. 5 Cir. 11/9/10); 54 So.3d 678, 688, writs denied, 10-2758 (La.4/25/11); 62 So.3d 89 and 10-2752 (La.5/20/11); 63 So.3d 974; State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11); 67 So.3d 535, writ denied, 11-1753 (La.2/10/12); 80 So.3d 468; State v. Neely, 08-707 (La.App. 5 Cir. 12/16/08); 3 So.3d 532, 538, writ denied, 09-0248 (La.10/30/09); 21 So.3d 272; State v. Davenport, 08-463 (La.App. 5 Cir. 11/25/08); 2 So.3d 445, 451, writ denied, 09-0158 (La.10/16/09); 19 So.3d 473.
Thus, we, by means of this opinion, correct this error and inform Defendant that no application for post-conviction relief, including an application for an out-of-time *1046 appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of LSA-C.Cr.P. art. 914 or 922.
Fourth, Defendant received an illegal sentence for his conviction for possession with the intent to distribute cocaine. Defendant was sentenced to 15 years imprisonment, with all 15 years to be served without the benefit of parole, probation, or suspension of sentence. Pursuant to LSA-R.S. 40:967(B)(4)(b), the sentence was required to be imposed without the benefit of parole, probation, or suspension of sentence only for the first two years. State v. McKenzie, 09-893 (La.App. 5 Cir. 2/15/11); 61 So.3d 54, 59. This error patent requires corrective action.
[^LSA-C.Cr.P. art. 882(A), provides this Court with the authority to amend Defendant’s sentence to reflect that only two years of the sentence is to be served without the benefit of parole, probation or suspension of sentence. See State v. Dee, 09-712 (La.App. 5 Cir. 2/23/10); 34 So.3d 892, 903, writ denied, 10-0705 (La.10/29/10); 48 So.3d 1097. Moreover, when a sentencing error involves the imposition of restrictions beyond what the legislature has authorized in the sentencing statute, the Louisiana Supreme Court has ruled that the Courts of Appeal “should not rely on LSA-R.S. 15:301.1(A) to correct the error as a matter of law but should correct the sentence on its own authority under La.C.Cr.P. art. 882 to correct an illegal sentence ‘at any time.’ ” State v. Sanders, 04-0017 (La.5/14/04); 876 So.2d 42 (per curiam).
Accordingly, we amend Defendant’s sentence to reflect that only two years of the sentence imposed is to be served without the benefit of parole, probation or suspension of sentence and remand this case for correction of the commitment regarding the noted benefit restriction error. We also direct the trial court to make the entries in the commitment reflecting this change and direct the clerk of court to transmit the original of the minute entry to the officer in charge of the institution to which Defendant has been sentenced and the Department of Correction’s Legal Department. See LSA-C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06); 937 So.2d 846 (per curiam).
Therefore, we affirm Defendant’s conviction, amend the sentence, and remand the matter to the trial court with instructions for correction of the commitment.

AFFIRMED; SENTENCE AMENDED; REMANDED WITH INSTRUCTIONS

. Defendant was also assessed a $35.00 fee in accordance with LSA-R.S. 15:168.

. The record does not reflect that a ruling on Defendant's Motion to Reconsider Sentence was made by the trial court.

. Detective Roniger testified that Hickman was not a confidential informant. Detective Roniger further testified that in exchange for the information provided, there was an agreement to "possibly pay” Hickman; however, after the arrest of Defendant, Hickman was unable to be located and, thus, was never paid.

. Detective Roniger described the area around Mike’s Discount as a high crime, high drug-trafficking area.

. On cross-examination, Detective Roniger testified that he met with Hickman at her house, which was located in the area of Mike’s Discount and spoke with her there. While at Hickman’s house, Detective Roniger testified that Hickman called Defendant on his cell phone and ordered a small quantity of crack cocaine.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Detective Klein testified that there were no narcotics found in the main residence. Detective Klein further testified that there were no clothes found inside the main residence that would indicate that Defendant lived there.

. The paperwork found in the back residence consisted of: a Louisiana chauffeur’s license, correspondence from the Social Security Administration, and two other documents, all bearing Defendant’s name and address at 1208 Marshall Drive.

. On cross-examination, Detective Klein testified that glasses are commonly used to put baking soda, hydrochloride, cocaine, and water, and then placed in the microwave to make crack cocaine. Also, on re-direct, Detective Klein testified that the glass that was seized contained a residue which was consistent with powder cocaine.

. Raven Barrois, an expert in the testing and analysis of controlled dangerous substances, testified that pursuant to her job duties with the Jefferson Parish Sheriff’s Office, Crime Laboratory, she tested three substances collected in connection with this matter. The first two substances were white, rock-like objects, weighing .43 grams and .34 grams respectively, and tested positive for cocaine. The third substance tested was a clear bag containing a white powder, which tested positive for cocaine and weighed 26.91 grams.

. Detective Klein further testified that the amount of cocaine, coupled with the paraphernalia, money and ledger found in Defendant’s residence was also consistent with the sale and distribution of narcotics.

. Hickman further testified that she did not give the officers a description of the person she was going to meet and did not recall whether she gave them a description of the vehicle. Hickman also testified that she did not realize what was going on because she was "so loaded” on "heroin and crack.”

. On re-direct examination, Hickman testified that she did not tell the police that she was going to meet Defendant, who drove a dark Chevy with a stripe on the side, to purchase drugs or engage in prostitution.

. Hickman testified that she is currently in jail for monetary instrument abuse, and the State did not offer her anything of value in exchange for her testimony. Hickman further testified that she has several prior convictions including "entry of inhabited dwelling, simple burglary, and possession.”

.On cross-examination, Detective Clogher testified that he verified that the phone call made by Hickman setting up the drug deal was made to Defendant’s phone. Detective Clogher further testified Defendant’s phone contained text messages indicative of narcotics trafficking.

. Defendant also testified the car he was driving did not belong to him.

. Defendant testified that the cash on his person could have been from the rent he collected from his tenant. Defendant also testified that because he is on parole, he is drug tested and his parole officer had visited and searched his back house once before.

. Compare, State v. Marshall, 02-1067 (La.App. 5 Cir. 2/25/03); 841 So.2d 881, writ denied, 03-0909 (La.9/26/03); 854 So.2d 345. In Marshall, the defendant was convicted of possession of cocaine with intent to distribute. Based on information received by the narcotics division, officers initiated surveillance on the defendant. During the surveillance, the defendant was observed in a green Ford Explorer participating in what officers believed to be a hand-to-hand drug transaction. The defendant was detained and a bag of cocaine was retrieved from his person, along with $18.00 in cash and a set of keys. During the month prior to defendant’s arrest, police conducted a surveillance on what they believed to be the defendant's apartment at 3401 Eden-born Drive in Metairie. During the extended surveillance, on three occasions, the officers observed the defendant leaving the apartment *1044 complex in the Ford Explorer. Thus, after arresting the defendant, the officers obtained a search warrant for the Edenborn apartment. The officers used the keys found on the defendant at the time of his arrest to open the door to the apartment. Upon executing the search warrant, the officers discovered 38 individually wrapped rocks of crack cocaine along with $830.00 in cash. The defendant appealed his conviction asserting that the State failed to prove that he possessed the cocaine found at the Edenborn apartment.
This Court affirmed the defendant's conviction based on the fact that he was seen on three occasions leaving the apartment complex in the Ford Explorer regularly used by the defendant and which was registered to his wife. Further, this Court noted that the officers found mail addressed to the defendant and his wife at die Edenborn address indicating a connection between the defendant and the apartment. Moreover, this Court determined that the defendant was in possession of the key to the apartment when he was arrested. Finally, this Court found that, although the lease was in the defendant’s wife’s name, she and the defendant were married, he frequently used her truck, and mail was found addressed to the defendant at the apartment. Thus, this Court reasoned that it could be surmised that the defendant and his wife shared the residence at Edenborn.

. LSA-C.Cr.P. art. 555 provides that ”[a]ny irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.”

. It is further noted that Defendant did not challenge his sentence as excessive on appeal. Moreover, Defendant did not object at sentencing or raise the trial judge’s failure to observe the delay as error.